******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ECKER, J., concurring in part and dissenting in part.
In 1999, the petitioner, Timothy Griffin, was sentenced
to a total effective term of forty years of imprisonment,
without the possibility of parole, for crimes he commit-
ted as a fourteen year old child. I agree with the majority
that the petitioner's transfer from the juvenile court to
the regular criminal docket does not violate article first,
§§ 8 and 9, of the Connecticut constitution and, there-
fore, concur in the result reached in part I of the majority
opinion. For the reasons explained in my dissenting
opinions in *State* v. *McCleese*, 333 Conn. 378, 429,
A.3d      (2019) (*Ecker, J.*, dissenting), and *State* v.
*Williams-Bey*, 333 Conn. 468, 477,      A.3d      (2019)
(*Ecker, J.*, dissenting), however, I disagree with the
majority that the indisputable violation of the petition-
er's constitutional right to have the mitigating, hallmark
features of youth considered at the time of his sentenc-
ing is cured by the parole eligibility conferred by § 1
of No. 15-84 of the 2015 Public Acts (P.A. 15-84), codified
at General Statutes § 54-125a. Accordingly, I respect-
fully dissent from part II of the majority opinion.

In *Miller* v. *Alabama*, 567 U.S. 460, 471, 132 S. Ct.
2455, 183 L. Ed. 2d 407 (2012), the United States
Supreme Court held that "children are constitutionally
different from adults for purposes of sentencing." This
conclusion "rested not only on common sense—on
what 'any parent knows'—but on science and social
science" studies confirming that children are substan-
tially less able than adults to control their impulses,
exercise self-control, resist peer pressure, consider
alternative courses of conduct, and appreciate the long-
term consequences of their actions. Id., 471; see id., 472
and n.5. These "transient" characteristics "both [lessen]
a child's moral culpability and [enhance] the prospect
that, as the years go by and neurological development
occurs, [the juvenile offender's] deficiencies will be
reformed." (Internal quotation marks omitted.) Id., 472.
As a result, "the penological justifications for imposing
the harshest sentences on juvenile offenders" is dimin-
ished even when those offenders "commit terrible
crimes." Id. The court in *Miller* therefore held that the
sentencer must "consider the mitigating qualities of
youth"; (internal quotation marks omitted) id., 476;
regardless of the severity of the crime. See id., 473
(clarifying that "none of what [the court] said about
children—about their distinctive (and transitory) men-
tal traits and environmental vulnerabilities—is crime-
specific").

The constitutional requirement of a *Miller*-compliant
sentencing hearing is both substantive; see *Montgom-
ery* v. *Louisiana*,      U.S.      , 136 S. Ct. 718, 736, 193

L. Ed. 2d 599 (2016); and procedural. See *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 69–71, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*, U.S. , 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016). Indeed, in *Casiano*, this court held, as a matter of state law, that *Miller* established a "watershed [rule] of criminal procedure . . . implicit in the concept of ordered liberty . . . meaning that it implicat[es] the fundamental fairness and accuracy of [a] criminal proceeding." (Citation omitted; internal quotation marks omitted.) Id., 63. We explained that the new sentencing procedure established in *Miller* "is central to an accurate determination that the sentence imposed [on a juvenile offender] is a proportionate one." Id., 69.

The record in the present case reflects that, when the trial court imposed a forty year sentence on the petitioner in 1999, it entirely failed to consider the mitigating factors of the petitioner's youth, "and all that accompanies it," as required by *Miller* v. *Alabama*, supra, 567 U.S. 479. Therefore, the petitioner's sentence was imposed in violation of his right to be free from cruel and unusual punishment under the eighth amendment to the United States constitution.[1]

For the reasons explained in detail in my dissenting opinion in *State* v. *McCleese*, supra, 333 Conn. 429 (*Ecker, J.*, dissenting), I believe that the parole eligibility conferred by § 1 of P.A. 15-84 is both too little and too late to remedy the violation of the petitioner's constitutional rights. In my view, the petitioner is entitled to a new sentencing proceeding at which the mitigating, hallmark features of youth existing at the time of his commission of the offenses properly are considered in fashioning a proportionate sentence, i.e., a sentence that is "graduated and proportioned to both the offender and the offense[s]." (Internal quotation marks omitted.) *Miller* v. *Alabama*, supra, 567 U.S. 469.

The majority refers to the practical difficulty in assessing the mitigating factors of youth and resentencing the petitioner due to the passage of time. No doubt these difficulties may arise at resentencing, to a greater or lesser degree, depending on the circumstances. I cannot agree, however, that this possibility relieves us of the obligation to provide a meaningful remedy for the constitutional violation that occurred at sentencing. "Constitutional violations implicating the courts must be susceptible of a judicial remedy." *Pamela B.* v. *Ment*, 244 Conn. 296, 313, 709 A.2d 1089 (1998). "Once a constitutional violation is found," a court is required to fashion a "remedy to fit the nature and extent of the constitutional violation." (Internal quotation marks omitted.) *Dayton Board of Education* v. *Brinkman*, 433 U.S. 406, 420, 97 S. Ct. 2766, 53 L. Ed. 2d 851 (1977). Even if resentencing the petitioner on remand presents a "difficult task," it "is what the [c]onstitution and our cases call for, and that is what must be done in this

case." Id.; see also *State* v. *Lyle*, 854 N.W.2d 378, 403 (Iowa 2014) (Resentencing juvenile offenders "will likely impose administrative and other burdens," but those are "burdens our legal system is required to assume. Individual rights are not just recognized when convenient."). The Supreme Court of Iowa made the point well: "Even if the resentencing does not alter the sentence for most juveniles, or any juvenile, the action taken by our [trial court] judges in each case will honor the decency and humanity embedded within [the state constitution] and, in turn, within every [citizen of the state]. The youth of this state will be better served when judges have been permitted to carefully consider all of the circumstances of each case to craft an appropriate sentence and give each juvenile the individual sentencing attention they deserve  . . . .  The [s]tate will be better served as well." *State* v. *Lyle*, supra, 403.

I therefore concur in the result reached in part I of the majority opinion and dissent from part II of the majority opinion.

[1] The majority concludes that the petitioner's substantive due process argument is inadequately briefed. See footnote 2 of the majority opinion. I reluctantly agree, although the petitioner's reference in his appellate brief to substantive due process rights that are "implicit in the concept of ordered liberty" is highly suggestive of our conclusion in *Casiano* that *Miller* establishes a watershed rule of criminal procedure—meaning precisely that the right is "implicit in the concept of ordered liberty . . . ." (Internal quotation marks omitted.) *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 63; see also *State* v. *McCleese*, supra, 333 Conn. 466–67 (*Ecker, J.*, dissenting) (pointing out due process implications of watershed designation).